*147
 
 Nash, J.
 

 The plaintiff and defendant are the owners of contiguous tracts of land, and both derive title under the Tuscarora tribe of Indians. One question in the case is» as to the boundary of their respective tracts. The plaintiff proved a regular claim of title from John McKashey, to whom the Tuscaroras had leased it by deed in 1777. The defendant deduced title from one Williams, to whom the Indians had conveyed by lease, dated in 1803. In the lease of 1777, a particular cypress is called for ; a cypress is also called for in the lease to Williams, and to show that the tree called for in the latter, is the same as that called for in the former, and the line leading from it was the true one, the plaintiff offered in evidence a deed from the Indians to Slade, Griffin, and others, executed in 1803, a few days after the lease to Williams; and also a grant from the State to one Pugh, issued in 1830. To this testimony the defendant objected, but it was received by the Court.
 

 Upon this exception no opinion is expressed. From the statement in the case, we can no,t see what bearing those two or either of them have or can have upon the point in dispute. We are told the purpose for which they were offered, and received, but not how they were to answer that purpose. The objection, upon which the case has been principally pressed before us, is as to the reception of the testimony, as to the damages to which the plaintiff was or might be entitled. The trespass complained of,.was incut-ting down timber. To show the amount of damages, to. which he was entitled, the plaintiff was permitted to give evidence, “ of the value of the logs, when cut and sawed into boards, and when worked into shingles, their value in logs, shingles, and boards, on the spot when cut, on the river, and: at the markets of Plymouth, and Edenton, and also to show the expense of cutting down, sawing off, floating out, rafting, and getting the logs to market, and their value at the'
 
 *148
 
 cost of getting them into shingles, and the value of the shingles of several kinds, and of getting them into boards, and the value of the boards at said markets.” This testimony was objected to by the defendant, but admitted by the Court. In the charge the Jury was instructed, “ that the rule and measure of the damages was such an amount, as would compensate the plaintiff for the injury sustained, and all the evidence admitted was to assist them in forming a correct and proper'estimate of the injury sustained by the plaintiff.”
 

 No fault is found with the rule laid down by his Honor, as to the damages to which the plaintiff was entitled, that is, the amount of the injury sustained ; but he entirely omitted to state the principles, upon which the rule was to be applied, and, by the admission of the testimony objected to, adopted a principle, not applicable to the case he was trying. The question was, how, in an action of trespass, the value of the timber taken was to be estimated, and his Honor informed the jury that the testimony was admitted to assist them in making that estimate. If, then, the evidence introduced into the inquiry an incorrect principle, which was calculated to mislead the Jury without a particular explanation of its proper meaning, it was wrong to admit it. There was error for which there ought to be a new
 
 venire.
 
 The testimony objected to -was avowedly offered by the plaintiff, to show the amount of damages he was entitled to. With that view he was suffered to prove what was the value of the timber cut, at market, when manufactured into boards and shingles, deducting the expenses incurred by the defendant, in preparing and carrying them to market. This is not the principle as applicable to this action. The plaintiff was entitled to the value of the timber as a chattel; which it became as soon as it was severed irom the land, at the stump, as it is said. The price at which it could have been sold where it was felled, was the pecuniary loss
 
 *149
 
 of the plaintiff. In the case of Porter
 
 v
 
 Mackie, 5. M. & S. 381, which was an action of trespass for digging and carrying away coal from the plaintiff’s coal mine, the Court say the plaintiff was entitled to the value of the coal, at the time when the defendant began to carry it away, that is, as soon as it existed ás a chattel. In Morgan
 
 v
 
 Powell, 3 Adol. & Ellis. 278, the same doctrine is held. Lord Den-man says, “ the Jury must give compensation for the pecuniary loss sustained by the plaintiff from the trespass committed, and the estimate of that loss depends on the value of the coal, when severed.1” In both these cases the Court say the defendant was entitled to be re-imbursed his costs in getting the coal to the mouth of the pit, because it could have ho value as a saleable article, without being taken from the pit', and that was the earliest moment, at which the plaintiff could have repossessed himself of the coal. Upon this principle, the defendant is entitled to no compensation for floating down the timber out of the swamp into the river, nor for any of his expenditures for manufacturing it or getting it to market; the true rule being, in an action of trespass, the value of the timber. It is not to be understood, that the rule of damages stated above applies to the cutting-down of ornamental trees or to the cutting of timber, with any circumstances of aggravation, as in this case, for here there was a dispute as to the boundaries of their respective tracts. For the error in admitting the evidence, the judgment is reversed, and a
 
 venire de novo
 
 awarded.
 

 Per Curiam, Judgment accordingly.